**Jane DOE et al.**

v.

**HALE HOSPITAL et al.**

Civ. A. No. 73–1587–C.

United States District Court,
D. Massachusetts.

Jan. 30, 1974.

James C. Hamilton, Nancy Gertner, John Reinstein, Boston, Mass., for plaintiffs.

A. David Mazzone, Moulton, Looney, Mazzone, Falk & Markham, Boston, Mass., for defendants.

OPINION

CAFFREY, Chief Judge.

This is a civil rights action filed in the name of "Jane Doe and Rebecca Roe," brought pursuant to 42 U.S.C.A. § 1983 against the Hale Hospital (a public hospital operated by the City of Haverhill, Massachusetts), the hospital Director and the members of the Board of Trustees of the Haverhill Municipal Hospitals. Jurisdiction of this Court is invoked on the basis of 28 U.S.C.A. § 1343 and 28 U.S.C.A. §§ 2201, 2202. Plaintiff Doe is a resident of the Commonwealth of Massachusetts whose true identity is a matter of impounded record in the file hereof, and plaintiff Roe is a resident of the State of New Hampshire whose true identity is also a matter of impounded record. Subsequent to the filing of the case, motions to intervene on behalf of Jane Doe II, Jane Doe III, Jane Doe IV, and Jane Doe V were allowed, as was a motion granting them leave to proceed herein without disclosing their true names on the public record, although their identities are on file and impounded.

Plaintiffs seek declaratory relief in the nature of a court order declaring that "the rules, policies and practices of the defendant hospital, its Director and its Board of Trustees, which prohibit the use of the hospital's facilities for elective abortions are unconstitutional in that they violate the right of plaintiffs . . . to privacy in matters respecting marriage, sex and procreation which is guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States." Plaintiffs also seek a declaration that said rules, policies and practices deny plaintiffs equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution, and plaintiffs seek a permanent injunction against the enforcement of said rules, regulations, policies and practices prohibiting or unnecessarily restricting elective abortions at the Hale Hospital.

Plaintiffs allege that they bring this suit as a class action "on behalf of a class consisting of all women who wish to terminate their pregnancy in the first and second trimester of pregnancy by non-therapeutic or elective abortions." Affidavits filed by the six plaintiffs disclose that at the time they became plaintiffs two of the plaintiffs were in the sixth week of pregnancy, three were in the eighth week, and one was in the tenth week of pregnancy. Because none

of the plaintiffs was in the second trimester of her pregnancy at the time she joined the case as a party plaintiff and because of the substantial medical differences between the situation of a woman in the first trimester as distinguished from a woman in the second trimester of pregnancy, I rule that this is a class action brought on behalf of women in the first trimester of their pregnancy, and I further rule that plaintiffs have not shown that they have satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, for treating this matter as a class action on behalf of women in the second trimester of pregnancy.

The case was tried by the Court without a jury and at trial the following relevant and material facts were stipulated: Each plaintiff consulted with and was examined by either Dr. Theodore Baratt or Dr. Gary Kraus. Both doctors are physicians licensed by the Commonwealth of Massachusetts, and are members of the medical staff of Hale Hospital. Each is a specialist in obstetrics and gynecology, certified by the American Board of Obstetrics and Gynecology. At the time that each of the six plaintiffs sought an abortion, the examining physician determined that she was pregnant. Each plaintiff advised the examining doctor that she wished to terminate her pregnancy by means of an elective abortion, and as to each plaintiff the examining doctor's medical judgment was that an abortion was in her best interests.

The Hale Hospital is a public hospital facility owned by the City of Haverhill, Massachusetts. Its operation is supervised and controlled by the members of a Board called the "Trustees of Municipal Hospitals of Haverhill." The members of this Board are appointed by the Mayor of Haverhill. Authority for the approval of the hospital's budget rests with the Mayor and the City Council of Haverhill.

On March 29, 1973, the Hale Hospital Board of Trustees voted that elective abortions be allowed to be performed at the Hale Hospital. At the same meeting the trustees voted that "implementation of the policy to allow abortions be deferred pending further clarification of proposed guidelines." On April 9, 1973, following receipt of a request from the Hale Hospital to reconsider their decision, the Trustees voted to table implementation of the abortion decision until specific answers were received from the Attorney General of Massachusetts and the leaders of the Massachusetts Senate and House of Representatives clarifying the issue. On May 21, 1973, Dr. Baratt scheduled the performance of an elective abortion at Hale Hospital upon plaintiffs Doe and Roe. On the same day the Hospital cancelled the scheduled abortions on the grounds that elective abortions were not permitted by the hospital Trustees. On June 26, 1973, the Board of Trustees voted to bar the performance of elective abortions. Therapeutic abortions are presently performed at the Hale Hospital subject to the approval of the hospital's Therapeutic Abortion Committee.

The Hale Hospital consists of seven buildings in which approximately 202 beds are available for inpatient care. In the calendar year 1972, there were 9195 inpatient admissions which averaged a stay of between six and seven days. In the years 1969 through 1972, hospital bed occupancy was at the rate of 83 per cent of available beds. The 9195 inpatient admissions in 1972 break down percentagewise as follows:

| | |
|---|---|
| Surgical | 43% |
| Medical | 32% |
| Obstetrical | 16% |
| Pediatric | 9% |

and the outpatient "admissions" numbered 31,306.

The primary service area of the Hale Hospital includes the City of Haverhill, Massachusetts and the towns of Merrimac, West Newbury, Groveland and Georgetown, Massachusetts, as well as

the towns of Atkinson, Hampstead, Plaistow and Newton, New Hampshire. 87% of the inpatient admissions reside in the primary service area and 90% of the outpatient cases are residents of the primary service area. Residents of Haverhill itself account for between 65 and 69 per cent of the inpatient admissions and 70 per cent of the outpatient cases. In 1972 there were 4866 surgical procedures performed at the Hale Hospital. These included 2276 major operations, 2020 minor operations, 79 outpatient cases and 491 sterilizations. In the first six months of 1973 there were 1173 major operations, 1065 minor operations, 87 outpatient visits, 321 sterilizations and 6 elective abortions. All six of the elective abortions involved females in the first trimester of their pregnancy.

In addition to the above-recited stipulated facts, all of which I find, I also find on the basis of the testimony of Hospital Director Charles F. Stumpf, that the occupancy rate for the operating room at Hale was substantially higher than the occupancy rate for the 202 available beds; namely, there was a 95 to 96 per cent use of the operating facilities during the year 1972.

Dr. Baratt testified that it was his opinion that there is a lack of significant medical difference between an abortion and a dilation and curettage during the first trimester of pregnancy. On the basis of the testimony of Dr. Daniel R. Taffe, Jr., Chief of Staff of Hale Hospital, whose specialty is obstetrics and gynecology, I find that during the first trimester an abortion is usually accomplished through the use of a procedure called dilation and curettage, that this procedure cannot be used in the second trimester, and that there is "very definitely a difference in risk between an elective abortion in the first trimester and one in the second trimester," and that the methods which have to be employed as a rule in the second trimester are "fraught with much more medical complication and surgical complication."

On the basis of the testimony of Dr. Baratt I find that an elective abortion normally involves the services of the attending doctor and one nurse, that it is handled the majority of the time on an outpatient basis, and that the facilities therefor at Hale Hospital meet the requirements outlined in the guidelines of the Massachusetts Department of Public Health. Dr. Baratt also testified that sterilization is "far more complicated than an elective abortion," and that a hysterectomy is also "far more difficult than an elective abortion."

Exhibit G establishes the fact that on February 22, 1973 the Executive Committee of the Hospital met and voted that the Hospital had adequate facilities for the performance of elective abortions in conformance with requirements of the state Department of Public Health. The Executive Committee did not on that occasion take a position favoring or disfavoring the performance of elective abortions, but did go on record to inform the staff and the Board of Trustees that in its opinion the institution had full capability for performing elective abortions. If material I find that the Hale Hospital permits sterilizations, hysterectomies, therapeutic abortions and other surgical procedures which are directly related to the patient's interest in sex, marriage and procreation and which procedures carry a greater risk of physical harm to the patient and impose a greater demand on the hospital facilities and personnel.

If material I find that there is one hospital in Salem, one hospital in Beverly, two hospitals in Lynn, and one hospital in Peabody, which allow elective abortions, and that these seem to be the only hospitals in that area of Massachusetts northeast of Boston which allow this procedure. In Hale Hospital's primary service area there are virtually no facilities for elective abortions and none are being performed in the primary service area since this procedure is not allowed at the Anna Jacques Hospital in Newburyport, the Amesbury Hospital in Amesbury, the Lawrence General Hospi-

tal in Lawrence or the Bon Secours Hospital in Methuen.

Taking the above facts, all of which were either expressly stipulated or are established by evidence or testimony that, in fact, was not controverted, the outcome of this case would appear inexorably indicated on the basis of a syllogism whose major premise is the opinion of the Supreme Court of the United States in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and whose minor premise is the opinion of the United States Court of Appeals for the First Circuit construing Roe v. Wade in the context of a publicly-supported municipal hospital, supplemented by the unchallenged fact that Hale Hospital is a publicly operated and financed municipal hospital, with the inevitable conclusion that because it is a publicly operated and financed municipal hospital action of the Trustees constitutes "state" action for purpose of application of the rule of Roe v. Wade.

In Roe v. Wade, *supra,* the majority opinion of the Court announced, at p. 153, 93 S.Ct. at p. 727:

> "This right of privacy . . . is broad enough to encompass a woman's decision whether or not to terminate her pregnancy."

at p. 154, 93 S.Ct. at p. 727:

> "We, therefore, conclude that the right of personal privacy includes the abortion decision, but that this right is not unqualified and must be considered against important state interests in regulation."

at p. 159, 93 S.Ct. at p. 730:

> "The pregnant woman cannot be isolated in her privacy. She carries an embryo and, later, a fetus . . . [I]t is reasonable and appropriate for a State to decide that at some point in time another interest, that of health of the mother or that of potential human life, becomes significantly involved. The woman's privacy is no longer sole and any right of privacy she possesses must be measured ac-

cordingly . . . . We need not resolve the difficult question of when life begins . . .".

at p. 162, 93 S.Ct. at p. 731:

> ". . . the State does have an important and legitimate interest in preserving and protecting the health of the pregnant woman . . . and . . . it has still *another* important and legitimate interest in protecting the potentiality of human life. These interests are separate and distinct. Each grows in substantiality as the woman approaches term and, at a point during pregnancy, each becomes 'compelling.' "

and at p. 163, 93 S.Ct. at p. 731:

> "With respect to the State's important and legitimate interest in the health of the mother, the 'compelling' point, in the light of present medical knowledge, is at approximately the end of the first trimester . . . .
>
> "This means . . . that, for the period of pregnancy prior to this 'compelling' point, the attending physician, in consultation with his patient, is free to determine, without regulation by the State, that in his medical judgment the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effectuated by an abortion free of interference by the State."

From the above quotations from Roe v. Wade, the major premise of the above referred to syllogism emerges as a statement by the Supreme Court of general application that during the first trimester of a woman's pregnancy a "physician, in consultation with his patient, is free to determine that the patient's pregnancy should be terminated . . . by an abortion free of interference by the State." It would appear to require no demonstration that an order, regulation or policy of hospital Trustees which totally prohibits elective abortions amounts to "interference by the State," and also amounts to "regulation by the State," if the action of those

hospital Trustees may properly be characterized as "state" action for purposes of the Roe v. Wade ruling.

The opinion of Chief Judge Coffin in Hathaway v. Worcester City Hospital, 475 F.2d 701 (1 Cir. 1973), clearly and unambiguously amounts to a ruling that action by the Trustees of the Worcester City Hospital is "State" action for purposes of application of the rules of Roe v. Wade and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Judge Coffin stated for the court, 475 F.2d at p. 706:

> ". . . once the state has undertaken to provide general short-term hospital care, as here, it may not constitutionally draw the line at medically indistinguishable surgical procedures that impinge on fundamental rights. . . ."

and at p. 707:

> "Accordingly, we reverse and remand for entry of an order declaring the Worcester City Hospital's policy against the use of its facilities in conjunction with sterilization operations unconstitutional and enjoining the individual appellees from enforcing the policy in the future."

From the foregoing opinions, *both of which are binding upon this Court*, it is clear that the policy presently being followed by the Trustees of Hale Hospital amounts to a violation of plaintiffs' rights under the equal protection clause of the Fourteenth Amendment. In view of this ruling, this Court does not reach plaintiffs' alternative contention that the Trustees' policy also violates rights to privacy asserted under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution.

This order in no way impinges upon the authority of the hospital Trustees and the Director of the hospital to make hospital facilities available to persons seeking elective abortions only on the same terms and subject to the same conditions as those imposed upon other would-be users of the hospital facilities. Nor does this order require that any individual member of the staff of Hale Hospital, or any employee of Hale Hospital, participate or assist in any way in the performance of these abortions if that person as a matter of conscience objects to so doing.

Lastly, this Court notes that in connection with the decision of the Supreme Court in Roe v. Wade, Mr. Justice White filed a dissenting opinion, joined in by Mr. Justice Rehnquist, in which Mr. Justice White observed, 410 U.S. at p. 221, 93 S.Ct. at p. 763:

> "With all due respect, I dissent. I find nothing in the language or history of the Constitution to support the Court's judgment. The Court simply fashions and announces a new constitutional right for pregnant mothers and, with scarcely any reason or authority for its action, invests that right with sufficient substance to override most existing state abortion statutes. The upshot is that the people and the legislatures of the 50 States are constitutionally disentitled to weigh the relative importance of the continued existence and development of the fetus, on the one hand, against a spectrum of possible impacts on the mother, on the other hand. As an exercise of raw judicial power, the Court perhaps has authority to do what it does today; but in my view its judgment is an improvident and extravagant exercise of the power of judicial review which the Constitution extends to this Court."

This Court regrets that it does not enjoy the freedom of accepting and rejecting described by Mr. Justice White where he said, at p. 222, 93 S.Ct. at p. 763:

> ". . . I cannot accept the Court's exercise of its clear power of choice by interposing a constitutional barrier to state efforts to protect human life and by investing mothers and doctors with the constitutionally protected right to exterminate it."

In view of the caveat spelled out in fn. 7, p. 707 of 475 F.2d, Judge Coffin's

opinion in Hathaway v. Worcester City Hospital, *supra*, an order will be entered enjoining the Trustees of the Hale Hospital and Charles F. Stumpf, the Director, but not the City of Haverhill, from enforcing the policy of the Trustees totally proscribing elective abortions during the first trimester of pregnancy.